**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL DIEFENBACHER,**

                **Plaintiff,**                    **5:04-CV-1071**
                                                        **(GLS/GJD)**

            **v.**

**SGT. GARY DAVENPORT, OFFICER**
**WILLIAM CLARK, and OFFICER**
**MICHAEL BLASCZIENSKI,**

                **Defendants.**[1]
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Michael Diefenbacher
Plaintiff, *Pro Se*
03-B-1675
Camp Georgetown Correctional
Facility
RD #1 Box 48
Georgetown, New York 13072-9307

**FOR THE DEFENDANTS:**

SMITH, SOVIK LAW FIRM         GABRIELLE M. HOPE, ESQ.
250 South Clinton Street
Suite 600
Syracuse, New York 13202-1252

---

[1] Defendants are sued both individually and in their official capacities. *See Dkt. No. 7*.

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

*Pro se* plaintiff, Michael Diefenbacher, alleges, pursuant to 42 U.S.C. § 1983, that defendants violated his Fourteenth Amendment rights. Pending under Federal Rule of Civil Procedure 56 is defendants' motion for summary judgment. *See Dkt. No. 35*. For the reasons that follow, defendants' motion is granted.

### II. Facts[2]

Viewing the facts in the light most favorable to Diefenbacher, the material facts are as follows. On July 18, 2002, Diefenbacher telephoned the Fulton Police Department from his home in Hannibal, New York. *See Def. SMF ¶ 3, Dkt. No. 35*. Officer Davenport was on duty that day, and he answered Diefenbacher's call. *See id. ¶ 4.* Diefenbacher reported to Davenport that a man named Adolfo Marquina-Tapia threatened him over the telephone. *See id. ¶ 5.* Diefenbacher told Davenport that he wished to

---

[2]Diefenbacher's complaint is nearly incomprehensible. In the interest of justice, and considering that Diefenbacher is *pro se*, the court liberally construes Diefenbacher's amended complaint to allege an Equal Protection claim in violation of the Fourteenth Amendment and a claim for negligence.

2

have Marquina-Tapia arrested for aggravated harassment.  *See id.* Davenport explained to Diefenbacher that he needed to pursue this complaint with the Oswego County Sheriff's Department because Hannibal, Diefenbacher's residence, was outside the jurisdiction of the Fulton Police Department.  *See Def. SMF ¶ 6, Dkt. No. 35.*  Instead, Diefenbacher asked Davenport if officers could accompany him to the Clark/Marquina-Tapia residence so that he could check on his son, Timothy Clark, who resided there with Marquina-Tapia and his mother, Judy Clark.  *See id. ¶ 7.* Davenport advised Diefenbacher that all officers were currently involved in other assignments and could not accompany him to the Clark/Marquina-Tapia residence at that time.  *See id. ¶ 8.*  Davenport strongly advised Diefenbacher not to go by himself or confront Marquina-Tapia.  *See id. ¶ 10.*  Nevertheless, Diefenbacher went to the Clark/Marquina-Tapia residence alone.  *See Def. SMF ¶ 12, Dkt. No. 35.*

Shortly thereafter, the Fulton Police Department received a report of a disturbance at the Clark/Marquina-Tapia residence.  *See id. ¶ 13.*  In response to the complaint, Officers Clark and Blasczienski arrived at the Clark/Marquina-Tapia residence and interviewed Diefenbacher and his son, Timothy.  *See id. ¶ 14.*  Diefenbacher told the officers that he was

3

concerned about Timothy's welfare because Marquina-Tapia owned a machete. *See id.* To the contrary, Timothy told the officers that Marquina-Tapia never threatened anyone nor used his machete toward anyone. *See Def. SMF ¶ 16, Dkt. No. 35.* Timothy also told them that it was actually Diefenbacher who was threatening Marquina-Tapia. *See id. ¶ 16.* Judy Clark, Timothy's mother, also confirmed that Timothy was not endangered in any way by Marquina-Tapia. *See id. ¶ 20.*

Later, Officer Blasczienski located Marquina-Tapia at the Holly Drive Motel and interviewed him about a machete. *See id. ¶ 17.* Marquina-Tapia was cooperative, showed him the machete, and explained that it was a tool he used while working at a farm. *See id. ¶ 18.* After interviewing Marquina-Tapia, the officers were satisfied that he had not used, threatened to use, or intended to use the machete against Diefenbacher or Timothy. *See Def. SMF ¶ 19, Dkt. No. 35.* The officers did not confiscate Marquina-Tapia's machete because they concluded that he did not commit a crime. *See id. ¶ 21.* After June 18, Diefenbacher did not place any emergency calls for assistance to defendants. *See id. ¶ 22.*

On the evening of July 12, Diefenbacher, Judy Clark, and others went out drinking at various establishments in the Fulton area. *See id. ¶ 23.* At

4

the end of the night, Diefenbacher believed that Judy Clark intended to spend the night with him at the Holly Drive Motel.  *See Def. SMF ¶ 24, Dkt. No. 35.*  However, Clark returned to her home without Diefenbacher in the early morning of July 13.  *See id.*  Meanwhile, Diefenbacher called the Clark/Marquina-Tapia residence at 1:41, 1:44, and 1:46 a.m. from the Holly Drive Motel.  *See id. ¶ 25.*  During the third phone call, Diefenbacher told Marquina-Tapia that he was coming to "kick his ass."  *Id.*  At approximately 1:58 a.m. on the morning of July 13, Diefenbacher appeared at the Clark/Marquina-Tapia residence and banged on the door.  *See id. ¶ 28.*  He yelled to Marquina-Tapia to "come outside or I'll kill you...."  *See id.*  Diefenbacher then broke down the rear door of the Clark/Marquina-Tapia residence, and the door struck Marquina-Tapia in the forehead.  *See id. ¶ 29.*  Marquina-Tapia struck Diefenbacher with a machete twice.  *See Def. SMF ¶ 30, Dkt. No. 35.*

Both Diefenbacher and Marquina-Tapia were arrested by the Fulton Police Department as a result of this incident, but the charges against Marquina-Tapia were eventually dropped.  *See id. ¶ 31.*  After being charged with burglary, assault, and criminal mischief, Diefenbacher was convicted and incarcerated.  *See id. ¶ 33.*  He currently resides at Cayuga

5

County Correctional Facility.  *See id.*

### III.  **Procedural History**

On September 14, 2004, Diefenbacher filed his original complaint pursuant to 42 U.S.C. § 1983.  *See Dkt. No. 1*.  On January 18, 2005, Diefenbacher filed an amended complaint against defendants, Davenport, Clark, and Blasczienski.  *See Dkt. No. 7*.  Defendants answered on August 1 and moved for summary judgment on July 26, 2006.  *See Dkt. Nos. 20, 35*.  Despite the passage of the due date, Diefenbacher failed to file a response to defendants' motion.  On September 6, the court ordered Diefenbacher to either notify the court and opposing counsel of his intention not to respond to defendants' motion or to file his elective response within fourteen days.  *See Dkt. No. 36.*  The deadline has now expired.  To date, Diefenbacher has failed to either respond to defendants' motion or to notify the court of his intention not to respond pursuant to the court's September 6th order.[3]  *See id*.

---

[3]Local Rule 7.1 states in pertinent part:

Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

Any party who does not intend to oppose a motion, or a movant who does not intend to

## IV.  Discussion

### A.  Motion for Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing FED. R. CIV. P. 56(c)); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165,170 (2d Cir. 2006) (citation omitted).  All reasonable inferences must be drawn in favor of the nonmoving party.  *See Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

---

> pursue a motion, shall promptly notify the court and the other parties of such intention. Notice should be provided at the earliest practicable date, but in any event no less than SEVEN CALENDAR DAYS prior to the scheduled return date of the motion, unless for good cause shown. Failure to comply with this Rule may result in the Court imposing sanctions.

N.D.N.Y. R. 7.1(b)(3).  "Courts in [the Northern] District [of New York] have found it appropriate to grant a dispositive motion pursuant to Local Rule 7.1(b)(3) based on a *pro se* plaintiff's failure to respond."  *McCarthur v. Carrier Corp.*, 5:01-CV-0011, 2005 U.S. Dist. LEXIS 39711, at *8 (N.D.N.Y. Sept. 30, 2005); *see also Robinson v. Delgado*, 96-CV-169, 1998 U.S. Dist. LEXIS 7903, at *2 (N.D.N.Y. May 22, 1998); *Cotto v. Senkowski*, 95-CV-1733, 1997 U.S. Dist. LEXIS 16462, at *1 (N.D.N.Y. Oct. 23, 1997); *Wilmer v. Torian*, 980 F. Supp. 106, 106-107 (N.D.N.Y. 1997).

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted); *see also SEC. v. Kern*, 425 F.3d 143, 147 (2d Cir. 2005). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). However, "[c]onclusory allegations, conjecture and speculation...are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

**B.   Defendants' Motion**

Defendants argue that Diefenbacher's complaint fails to state a claim upon which relief can be granted. In particular, defendants argue: (1) that the allegations in the complaint fail to state violations of 42 U.S.C. §§ 1983,1985, or the Fourteenth Amendment; (2) that, in the absence of a special relationship between the parties, the defendants cannot be liable to Diefenbacher for any alleged failure to provide adequate police services; and (3) that, alternatively, defendants are entitled to qualified immunity.

As an initial matter, the court has liberally construed Diefenbacher's complaint to allege two causes of action, an Equal Protection claim and a

8

negligence claim.  As defendants properly noted, Diefenbacher has alleged claims against them in both their official and individual capacities.  For the reasons that follow, Diefenbacher's claims are dismissed.

### 1. The Merits

#### a. Equal Protection Claim

Defendants argue that Diefenbacher's Equal Protection claim fails as a matter of law for two reasons.  First, defendants argue that they cannot be held liable in their official capacities because Diefenbacher failed to allege an unconstitutional policy or custom that violates the Equal Protection Clause.  Second, defendants argue that they cannot be held liable in their individual capacities because Diefenbacher failed to state a claim for which relief can be granted.  In particular, defendants maintain that Diefenbacher failed to allege that he was treated differently from those similarly situated and that such impermissible treatment was based on a discriminatory motive.

The Equal Protection Clause directs state actors to treat similarly situated people alike.  *See City of Cleburn v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985).  To prove an Equal Protection violation, claimants must prove "purposeful discrimination...directed at an identifiable or suspect

9

class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citation omitted).

Defendants are correct that official-capacity claims under § 1983 must be based on an unconstitutional policy, custom, or regulation.  *See Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694-95 (1978).  In fact, a municipality or person sued in their official capacity can be found liable under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id.* at 690.

Here, Diefenbacher has failed to set forth allegations demonstrating that he was deprived of his constitutional rights because of an impermissible municipal custom or policy.  Accordingly, Diefenbacher's Equal Protection claim against the defendants in their official capacities is dismissed.

Next, defendants argue that Diefenbacher failed to allege, even in conclusory fashion, the basic elements of an Equal Protection claim.  In order to establish an Equal Protection claim, a plaintiff "must allege that a government actor intentionally discriminated against [him] on the basis of

10

race, national origin, or gender." *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999). "Such intentional discrimination can be demonstrated in several ways." *Id.* First, a plaintiff can point to a law or policy that is facially discriminatory, meaning that "it expressly classifies persons on the basis of race or gender[ ]" or national origin. *Id.* Second, a plaintiff can point to a government action that is facially neutral but applied in a discriminatory fashion. *See id.* Finally, a facially neutral policy or government action "violates equal protection if it was motivated by discriminatory animus and its application results in discriminatory effect." *Hayden*, 180 F.3d at 48.

    Here, Diefenbacher has not pointed to any discriminatory law, policy, or practice. He has not alleged that he suffered any discrimination on account of his race, national origin, or gender in connection with the events giving rise to this suit. Diefenbacher's sole allegation is that defendants failed to pursue his complaints because they "did not like him due to many previous encounters...and [they] brushed the incidents off." *Dkt. No. 7, p. 5.* Moreover, he has failed to allege facts demonstrating that he was treated differently than those similarly situated. These facts alone fail to satisfy even the minimal elements of an Equal Protection claim.

11

As stated, Diefenbacher has failed to allege facts demonstrating that he was treated differently than those similarly situated because of defendants' purposeful discrimination.  Even when liberally construed, Diefenbacher's amended complaint fails to set forth a viable Equal Protection claim against the defendants.  Accordingly, defendants' summary judgment motion is granted, and Diefenbacher's Equal Protection claim is dismissed.[4]

### b.   Negligence Claim

Defendants maintain that they cannot be liable under a negligence theory because they had no special relationship with Diefenbacher. Generally, New York law requires that a plaintiff in a negligence action establish: "(1) that the defendant owed him...a cognizable duty of care; (2) that the defendant breached that duty; and (3) that [he] suffered damage as a proximate result of that breach." *Di Benedetto v. Pan Am World Serv. Inc.*, 359 F.3d 627, 630 (2d Cir. 2004) (citing *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)).

In proving the duty element, "[t]he plaintiff must establish not only that

---

[4]As defendants correctly point out, Diefenbacher cannot state a claim under 42 U.S.C. § 1985 because he has not alleged the existence of a conspiracy.  *See* 42 U.S.C. § 1985. Accordingly, to the extent that Diefenbacher's complaint stated any potential claim under 42 U.S.C. § 1985, it is dismissed as a matter of law.

12

a defendant owed a general duty of care to society as a whole, but also that the defendant owed a specific duty running to the particular plaintiff." *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 206 (E.D.N.Y. 2004). In New York, courts balance the following five factors in order to determine the existence of a duty: "(1) the reasonable expectations of the parties and society generally; (2) the proliferation of claims; (3) the likelihood of unlimited or insurer-like liability; (4) disproportionate risk and reparation allocation; and (5) public policies affecting the expansion or limitation of new channels of liability." *Id.* (internal quotation marks and citation omitted).

Moreover, a municipality or its employees "may not be held liable for injury to a claimant resulting from a simple failure to provide police protection even against future harm." *Tyler v. Deutsch*, 93-CV-4609, 1995 WL 313137, at *1 (E.D.N.Y. May 16, 1995). However, a narrow exception exists when there is special relationship between the parties. *See Cuffy v. City of New York*, 69 N.Y.2d 255, 260 (1987). A special relationship arises when there are: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction

13

could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking[.]" *Cuffy*, 69 N.Y.2d at 260.  Finally, it is well-settled that an individual has no constitutional right to a police investigation, police action, or an arrest or prosecution of another person absent "class-based" discrimination.  *See Tyler*, 1995 WL 313137, at *2.

Here, Diefenbacher has not alleged the existence of a special relationship.  He has not alleged that defendants promised him they would protect him from Marquina-Tapia.  Defendants had no contact with Diefenbacher after June 18, 2002.  Defendants could not have known on June 18, 2002 that Diefenbacher would go to the Clark/Marquina-Tapia household a month later, barge through the front door, and initiate a confrontation with Marquina-Tapia, causing Marquina-Tapia to defend himself with a machete.

Based on these facts, defendants had no special relationship with Diefenbacher as a matter of law.  Accordingly, defendants' motion is granted, and, to the extent that Diefenbacher's second cause of action sounds in negligence, it is dismissed.

### 2.     **Qualified Immunity**

In the alternative, defendants maintain that they are entitled to qualified immunity.  Government agents enjoy qualified immunity when they perform discretionary functions if either "(1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively unreasonable to believe that [their] acts did not violate these clearly established rights."  *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998) (internal quotations marks and citation omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

To determine whether a right was clearly established, the court must ask whether: (1) the law was defined with reasonable clarity, (2) the Supreme Court or Second Circuit has affirmed the rule, or (3) a reasonable defendant would have understood from the existing law that the conduct was unlawful.  *See Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003).  Even in the absence of binding precedent, a right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right[,]...and the unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

15

Moreover, within the context of summary judgment, the issue instead is whether a reasonable jury, looking at the evidence in the light most favorable to the plaintiff, could conclude that it was objectively unreasonable for the defendants to believe that they were acting in a fashion that did not clearly violate an established *federally* protected right. *See Robison* v. *Via*, 821 F.2d 913, 921 (2d Cir. 1987).

The court has already determined that defendants' conduct did not violate any clearly established constitutional rights.  Since Diefenbacher has not cited any case law to the contrary, and it is well-settled that an individual is not constitutionally entitled to police action, the defendants are entitled to qualified immunity.  Even if Diefenbacher had alleged facts sufficient to state a viable claim, the defendants are entitled to qualified immunity.  Accordingly, defendants' motion is granted.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (*Dkt. No. 35*) is **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties.

16

**IT IS SO ORDERED.**

January 12, 2007
Albany, New York

                                                  Gary L. Sharpe
                                                  U.S. District Judge